UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL WEST, M.D.,

        Plaintiff,

v.

ADVANTAGE HEALTH/SAINT MARY'S
MEDICAL GROUP d/b/a TRINITY HEALTH
MEDICAL GROUP (f/k/a MERCY HEALTH
PHYSICIAN PARTNERS) and MERCY HEALTH
PARTNERS d/b/a TRINITY HEALTH
MUSKEGON HOSPITAL,

        Defendants.

Case No. 1:24-CV-1236

Hon. Jane M. Beckering

_____

### DEFENDANTS'ANSWER TO AMENDED COMPLAINT AND JURY DEMAND

Defendants, Advantage Health/Saint Mary's Medical Group d/b/a Trinity Health Medical Group (f/k/a Mercy Health Physician Partners) and Mercy Health Partners d/b/a Trinity Health Muskegon Hospital (collectively referred to herein as "Defendants"), by and through their attorneys, Hall, Render, Killian, Heath & Lyman, P.C., answer Plaintiff's Complaint and Demand for Jury Trial as follows:

### RESPONSE TO INTRODUCTION

1.    This action arises under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq.; and a factually-related state law claims for violation of Michigan's Whistleblowers' Protection Act ("WPA"), Mich. Comp. Laws § 15.361 et seq.

### ANSWER:

In response to Paragraph 1 of Plaintiff's Amended Complaint, Defendants answer that the same states a legal conclusion to which no response is required. To the extent that further response

1

is required, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

2.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

**ANSWER:**

In response to Paragraph 2 of Plaintiff's Amended Complaint, Defendants answer that the same states a legal conclusion to which no response is required. To the extent further response is required, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

3.      Venue is proper in the Western District of Michigan. The acts which are the subject of this action occurred in the Western District of Michigan.

**ANSWER:**

In response to Paragraph 3 of Plaintiff's Amended Complaint, Defendants answer that the same states a legal conclusion to which no response is required. To the extent further response is required, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

**RESPONSE TO THE PARTIES**

4.      Plaintiff Dr. Daniel West, M.D., is a board-certified cardiologist and resident of Muskegon County, Michigan, located in the Western District of Michigan. Dr. West has worked in the Muskegon community as a cardiologist for Defendant Advantage Heath/Saint Mary's Medical Group d/b/a Trinity Health Medical Group (f/k/a Mercy Health Physician Partners) ("AHSMMG") and its various predecessor entities for 35 years. On October 28, 2024, AHSMMG fired Dr. West without cause and without warning. In fact, representatives of AHSMMG refused to provide any explanation for firing Dr. West, except to confirm that it was without cause.

**ANSWER:**

In response to Paragraph 4 of Plaintiff's Amended Complaint, first and second sentences, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs. Defendants deny the remaining allegations contained in Paragraph 4 of the Amended Complaint as they are untrue.

5.     Plaintiff had privileges at Defendant Mercy Health Partners d/b/a Trinity Health Muskegon Hospital ("Mercy Health Partners") and its various predecessor entities until AHSMMG fired him without cause on October 28, 2024.

**ANSWER:**

In response to Paragraph 5 of Plaintiff's Amended Complaint, Defendants admit only that Plaintiff's employment ended on October 28, 2024 per a provision in Plaintiff's Physician Employment Agreement that permitted either party to end the relationship for any or no reason by providing at least one hundred twenty (120) day(s) prior written notice. In all other respects, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

6.     Defendant Mercy Health Partners d/b/a Trinity Health Muskegon Hospital (THMH) is a hospital in Muskegon County and is part of the multi-state Trinity Health system. Mercy Health Partners delivers healthcare to individual patients throughout Michigan and other states at a number of facilities and in multiple practice specialties.

**ANSWER:**

In response to Paragraph 6 of Plaintiff's Amended Complaint, first sentence, Defendants admit the same. In response to the second sentence, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiffs to his proofs.

7.     Plaintiff and Defendant AHSMMG entered into their most recent employment agreement on or about June 1, 2022.

**ANSWER:**

In response to Paragraph 7 of Plaintiff's Amended Complaint, Defendants admit only that June 1, 2022 was the date of the most recent employment agreement between Plaintiff and Advantage Health/Saint Mary's Medical Group d/b/a Trinity Health Medical Group ("Trinity Health Medical Group") and that such agreement was subsequently amended.

### RESPONSE TO INTRODUCTION

8.     After Plaintiff concluded his cardiology fellowship in 1989, he joined a cardiology practice group, West Shore Cardiology, with privileges at what was then known as Hackley Hospital in Muskegon, Mercy Hospital in Muskegon, Muskegon General Hospital, and North Ottawa Community Hospital, now collectively known as Trinity Health. He has practiced continuously in the Muskegon community at the same hospitals, despite multiple name changes and mergers since that time.

**ANSWER:**

In response to Paragraph 8 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

9.     During his 35-year career in Muskegon, Dr. West has had a strong work ethic, wonderful patient relationships, and a collegial relationship with his colleagues (both physicians and other staff). During his tenure in Muskegon, Dr. West was deeply involved in the sale of West Shore Cardiology to Mercy Hospital, the relocation of the office, and worked closely with four different practice office managers.

**ANSWER:**

In response to Paragraph 9 of Plaintiff's Amended Compliant, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

10.     Dr. West served as Lead Cardiologist of the practice at AHSMMG until June 17, 2024, as well as Chief of Cardiology for Trinity Health Muskegon Hospital until that same date. On that date, Defendants summarily suspended Dr. West from his office practice and from his hospital privileges, without due process and in violation of multiple policies. Defendants suspended Dr. West because he reported to the Trinity Health administration that one of his colleagues, Dr. David Dirk Bonnema, had been performing unnecessary patient surgeries. Dr. West lodged this allegation after an extensive study of those procedures by the other doctors in the practice.

**ANSWER:**

In response to Paragraph 10 of Plaintiff's Amended Complaint, first sentence, Defendants admit the same.  In all other respects, Defendants deny the same as untrue.

11.     Defendants refused to detail to Dr. West the substance of the allegations leading to Defendants' summary suspension of Plaintiff, which they said only was because of an alleged "behavior" issue that they would not further specify. Defendants did not provide any opportunity to respond or answer questions for several weeks. In the meantime, AHSMMG canceled and rescheduled patient visits and procedures with Dr. West – which are scheduled for weeks or months in advance – in an area which is already short of cardiologist services.

**ANSWER:**

In response to Paragraph 11 of Plaintiff's Amended Complaint, Defendants deny the same as untrue.

12.     On or about July 11, 2024, Dr. West and all of the other cardiologists in the Trinity Health cardiology practice in Muskegon submitted a signed letter outlining their concerns about Dr. Bonnema's procedures to multiple members of Defendants' respective administrative teams.

**ANSWER:**

In response to Paragraph 12 of Plaintiff's Amended Complaint, Defendants admit only that Plaintiff and seven other cardiologists signed a letter that was addressed to "Trinity Administrators" on or around July 11, 2024. In all other respects, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

13.     On July 18, 2024, Dr. West reported the concerns of the cardiologists regarding Dr. Bonnema's procedures to the U.S. Attorney's office in Grand Rapids, specifically the assistant U.S. Attorney assigned to review cases of alleged fraudulent claims to the Medicare and Medicaid programs.

**ANSWER:**

In response to Paragraph 13 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

14.     On August 2, 2024, Plaintiff's attorney advised Defendants that the U.S. Attorney's Office requested that Dr. West provide his documents to the U.S. Attorney's Office related to his claim about Dr. Bonnema providing unnecessary surgeries.

**ANSWER:**

In response to Paragraph 14 of Plaintiff's Amended Complaint, Defendants admit only that on August 2, 2024, Plaintiff's counsel informed Defendants he was in receipt of a request from the federal government for information. In all other respects, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

15.    Earlier the same day, August 2, 2024, AHSMMG notified Dr. West that it would return him to work on a "Final Written Warning" status. Trinity Health Muskegon Hospital restored Dr. West's privileges, but Mercy Health Partners and AHSMMG later made permanent his removal as Chief of Cardiology and lead partner of the cardiology practice. Defendants refused to return him to those positions, informing him that he could no longer serve in those roles because AHSMMG had placed him on "Final Written Warning" status.

**ANSWER:**

In response to Paragraph 15 of Plaintiff's Amended Complaint, Defendants admit only that a "Final Written Warning" was issued by Trinity Health Medical Group to Plaintiff on or around August 2, 2024. In response to the second sentence, Defendants deny only the allegation that Trinity Health Muskegon restored Dr. West's privileges as untrue. In all other respects, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

16.    Dr. West returned to treating patients for three months until Dr. Mohammed Salameh, CMO of AHSMMG Michigan; Dr. Lisa Kinsey-Callaway, CMO of AHSMMG West Michigan; and Michael Hardiman, of the Trinity Health Human Resources Department, met with Dr. West on October 28, 2024, and advised Dr. West that AHSMMG was firing him without cause. They refused to provide any further information. Dr. Salameh stated clearly that Dr. West's restrictive covenant, i.e., his non-compete agreement with AHSMMG, would be considered null and void as the termination was without cause.

**ANSWER:**

In response to Paragraph 16 of Plaintiff's Amended Complaint, Defendants admit only that Dr. Mohammed Salameh, Dr. Lisa Kinsey-Callaway, Michael Hardiman met with Plaintiff to

notify him of the termination of his employment on October 28, 2024. In all other respects, Defendants deny the same as untrue.

17.     The true reason for Defendants' decision to fire Dr. West was in retaliation for his report that Dr. Bonnema was performing unnecessary surgeries – a report that was supported by the other physicians in the cardiology practice.

**ANSWER:**

In response to Paragraph 17 of Plaintiff's Amended Complaint, Defendants deny the same as untrue.

### RESPONSE TO BACKGROUND

18.     In June 2021, the lead echocardiography technician for the cardiology practice, Alisha Stitt, approached Dr. West and Dr. John Meek to express concerns that Ms. Stitt had regarding Dr. Bonnema's interpretation of echocardiographic studies on patients who were being considered for the implantation of cardioverter defibrillators.

**ANSWER:**

In response to Paragraph 18 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

19.     Implantable cardioverter defibrillators (ICDs) are cardiac devices similar to, but more powerful than, a pacemaker. Whereas a pacemaker's role is to prevent inappropriately slow heart beats, an ICD is a fully functional pacemaker that can also shock a patient internally, in the same way a first responder might shock a patient externally, when a life-threatening arrhythmia is detected. ICDs have two primary indications: a patient who has survived a potentially lethal abnormal heart rhythm, or a patient with a sufficiently weakened heart that they are at increased

risk for sudden cardiac death. The concerns of Dr. West and his other cardiology physician colleagues involved patients of Dr. Bonnema in the latter category.

**ANSWER:**

In response to Paragraph 19 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

20.    Ms. Stitt brought an echocardiogram of a patient of Dr. Bonnema's to Dr. West and others and raised concerns that Dr. Bonnema was misreading the results, frequently documenting reports of ejection fractions (EFs) of .35 or less, when it was felt to be clear that the heart was much stronger. Results of EFs of .35 of less would indicate that an ICD was appropriate and necessary for a patient. This particular study that Ms. Stitts provided to Dr. West and his colleagues – of a patient for whom Dr. Bonnema had scheduled surgical placement of an ICD – was then reviewed by three cardiologists, who all felt the EF to be closer to .45. Interestingly, Dr. Bonnema had deleted the technician's objective assessment, called Simpson Bi-plane, from the report.

**ANSWER:**

In response to Paragraph 20 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

21.    When confronted by Dr. West, Dr. Bonnema claimed that his interpretation was accurate and proceeded with the ICD surgery.

**ANSWER:**

In response to Paragraph 21 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

22.    After then looking at some of Dr. Bonnema's other EF measurements on a few other patients, Dr. West and some of his colleagues felt Dr. Bonnema was engaging in a pattern of

consistent underestimation of the ejection fraction (EF) measurement, with frequent reports of EFs of .35 or less, which would otherwise support a conclusion that surgical implantation of an ICD was indicated. Intentional underestimation of the EF leads to the unnecessary, expensive and risky implantation of ICDs in patients who do not require them, with a subsequent need to replace the devices every 8-10 years when the batteries would become depleted.

**ANSWER:**

In response to Paragraph 22 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

23.    Further investigation disclosed that nuclear medicine technicians had also witnessed Dr. Bonnema requesting manipulations of data on nuclear studies to achieve EFs of .35 or less.

**ANSWER:**

In response to Paragraph 23 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

24.    In the meantime, Mercy Health Partners elevated Dr. Bonnema to its Chair of its Peer Excellence Committee, which conducts peer review of other physicians' clinical decisions. Shortly after this appointment, Dr. West expressed his concerns about Dr. Bonnema's potentially fraudulent activity to Dr. Justin Grill, the Chief Medical Officer for Trinity Health in Muskegon. Upon learning of these concerns, Dr. Grill chose to defer further investigation to Dr. West and told Dr. West to bring any proof of the allegations to his attention, so that it could be reviewed by Dr. Bonnema's PEC Committee.

**ANSWER:**

In response to Paragraph 24 of Plaintiff's Amended Complaint, first sentence, Defendants deny the same in the form and manner alleged. In response to the second sentence, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs. In response to the third sentence, Defendants deny the same as untrue.

25.     Dr. West and his fellow cardiologists then spent nearly two years attempting to investigate Dr. Bonnema's ICD procedures without official AHSMMG or Mercy Health Partners' assistance.

**ANSWER:**

In response to Paragraph 25 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

26.     In the meantime, in 2021, AHSMMG administration hired Mary Hewitt to become the new practice manager for the cardiology office in Muskegon. Within six months to a year, Ms. Hewitt had clashed with almost all of the Muskegon cardiologists, and many of them felt that she did not possess the skills and temperament needed to be successful. At one point, she refused to continue attending practice group meetings – even though they were an integral part of her responsibilities as the office manager. She made it clear to others that the primary reason was her inability to tolerate any difference of opinion from the providers, even when presented in a civil, respectful and constructive manner.

**ANSWER:**

In response to Paragraph 26 of Plaintiff's Amended Complaint, first sentence, Defendants admit only that Defendant Mercy Health Partners d/b/a Trinity Health Muskegon Hospital's personnel records reflect that Ms. Hewitt was hired as a Practice Manager with the West Shore

Cardiology Department in 2021. In all other respects, Defendants lacks knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

27.    On October 19, 2023, Dr. West, as the lead physician for AHSMMG- Cardiology in Muskegon, took the physicians' concerns about Ms. Hewitt's performance to her supervisor, Patrick Ahearn, the Regional Director of Cardiovascular Services. Despite learning of the situation, Mr. Ahearn appeared to have ignored the providers' pleas for help and instead sided with Ms. Hewitt.

**ANSWER:**

In response to Paragraph 27 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

28.    On May 13, 2024, during a weekly practice group meeting with Mr. Ahearn present with all of the other Muskegon cardiologists, Dr. Bonnema openly admitted his intention to falsify medical records by intentionally underestimating the ejection fraction on an echocardiogram to allow placement of a cardiac device. While Mr. Ahearn did not appear to comprehend the significance of Dr. Bonnema's admission, the other physicians present for this admission were shocked.

**ANSWER:**

In response to Paragraph 28 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

29.    On May 15, 2024, Dr. West finally received a list from a medical device provider, which he had been attempting to obtain for some time, that detailed devices, including ICDs, that they supplied to the Muskegon cardiology practice, with notation on the implanting cardiologist.

This allowed Dr. West and other colleagues to complete a comprehensive review of Dr. Bonnema's patient files where ICDs had been surgically implanted.

**ANSWER:**

In response to Paragraph 29 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

30.    With at least three doctors from the practice reviewing each patient file from Dr. Bonnema's surgeries, a troubling pattern emerged of fraudulent implantation of ICDs on patients whose imaging did not support a recommendation to do so, exposing those patients to risky surgery and permanent placement of a sizeable device inside their chests. Dr. West collected all of the information gathered from the reviewing doctors into a single report to give Mercy Health Partners' executives.

**ANSWER:**

In response to Paragraph 30 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

31.    Three weeks after revealing that report to his superiors, on June 17, 2024, Defendants suspended Dr. West from both his employment and his hospital privileges with only a vague explanation of a concern related to his "behavior" in the office that warranted immediate suspension. It was made very clear that this suspension had nothing to do with the hospital or patient care. Michael Hardiman, of the Human Resources Department, informed Dr. West that his immediate suspension and investigation would be completed by June 28, 2024.

**ANSWER:**

In response to Paragraph 31 of Plaintiff's Amended Complaint, first sentence, Defendants admit only that Plaintiff was suspended from Defendant Trinity Health Medical Group. In further

response to the first sentence, Defendants deny the allegation that Defendants suspended Plaintiff of his hospital privileges as untrue. In all other respects, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

32.     Dr. Bonnema has close relationships with Dr. Jerry Evans, currently the chief of staff for Mercy Health Partners; Dr. Justin Grill, CMO of Mercy Health Partners; Dr. Theodore Boeve, interim Chief of Cardiology; and Gary Allore, President of Mercy Health Partners.

**<u>ANSWER:</u>**

In response to Paragraph 32 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

33.     On June 26, 2024, Mr. Hardiman instead informed Plaintiff that his suspension from employment and hospital privileges would continue indefinitely, as he reported, because the investigation allegedly proved to be more complicated than had been originally anticipated. At that point, no one from AHSMMG or Mercy Health Partners had yet interviewed Plaintiff or told him any more about the alleged "behavior" concern. Plaintiff later learned that some of the office staff, who all worked under the supervision of Ms. Hewitt, had informed patients that Plaintiff was "retiring" or "retired," or insinuated that he was not likely to come back to work when they called to reschedule his canceled patient office visits and procedures. Some patients had interpreted the staff's comments as suggesting Dr. West was stricken by a medical or mental health crisis.

**<u>ANSWER:</u>**

In response to Paragraph 33 of Plaintiff's Amended Complaint, first sentence, Defendants admit only that Plaintiff quotes in part a communication from Mr. Hardiman, dated June 26, 2024 and otherwise deny the allegations in the form and manner alleged. In all other respects,

Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

34.    Plaintiff feared that AHSMMG might just fire him and bury what Plaintiff reported about Dr. Bonnema's procedures, so he and the rest of the cardiologists authored a letter to Jason Harris, COO of Trinity Health Michigan Medical Group; Dr. Lisa Kinsey-Calloway, CMO of AHSMMG; and Dr. Grill, CMO of Mercy Health Partners. Plaintiff also lodged his concerns with the U.S. Attorney's Office.

**ANSWER:**

In response to Paragraph 34 of Plaintiff's Amended Complaint, Defendants admit only that Plaintiff describes an email he sent to Mr. Harris, Dr. Kinsey-Calloway, and Dr.  Grill. In all other respects, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

35.    On July 24, 2024, Monica Lareau, Vice President of Privacy and Organizational Integrity for the Trinity system, contacted Plaintiff and all of the other physicians who signed the letter to report their opinion that Dr. Bonnema had implanted unnecessary ICDs. Ms. Lareau accused the physicians of being in violation of HIPAA privacy laws by their email transmission of the evidence against Dr. Bonnema – that Dr. Grill had instructed Plaintiff to bring to him if he had it. Ms. Lareau demanded that all of the physicians on the letter destroy all of their copies of the accompanying data to support the letter. Nothing was said to Plaintiff or the other cardiologists about Defendants doing anything to investigate the substance of the serious allegations in their letter.

**ANSWER:**

15

In response to Paragraph 35 of Plaintiff's Amended Complaint, Defendants deny the same in the form and manner alleged.

36.    On August 2, 2024, Plaintiff's attorney contacted Tiffany Buckley- Norwood, the associate general counsel for Mercy Health Partners, and asked to discuss the command that Dr. West destroy this evidence, noting that the U.S. Attorney's Office had sent a request for the information to Plaintiff. Plaintiff's counsel also noted that she had requested that Defendants implement a litigation hold, for which this information would qualify, and which also counseled against destruction.

**ANSWER:**

In response to Paragraph 36 of Plaintiff's Amended Complaint, Defendants admit only that on August 2, 2024, Plaintiff's attorney contacted Ms. Buckley-Norwood and noted that the U.S. Attorney's Office sent a request for information to Plaintiff. In all other respects, Defendants deny in the form and manner alleged.

37.    In addition, the assistant U.S. Attorney investigating the matter supported Plaintiff's counsel's view that Plaintiff and his colleagues had not violated HIPAA by transmitting patient data for the purpose of making a report like the one they did.

**ANSWER:**

In response to Paragraph 37 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

38.    Nonetheless, after providing the information to the U.S. Attorney's Office pursuant to its official request and confirming that Mercy Health Partners' counsel preserved the material, Plaintiff complied with Defendants' again-repeated command to destroy his copies.

**ANSWER:**

In response to Paragraph 38 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

39.     AHSMMG returned Plaintiff to work on August 5, 2024, and similarly restored his hospital privileges on that date. AHSMMG returned him under a "Last Chance"-style agreement, saying that they allegedly found that his behavior with staff was a problem. They noted instances where they said Plaintiff opposed new administrative practices and would not submit to those requirements despite being told. However, they refused Plaintiff access to their report of investigation and refused further specifics in writing. They told him only that if he violated any "further" policies of the Muskegon Hospital or AHSMMG, Defendants would terminate him.

**ANSWER:**

In response to Paragraph 39 of Plaintiff's Amended Complaint, Defendants admit only that Plaintiff returned to work on August 5, 2024. In all other respects, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

40.     Despite feeling that this was a set-up for a retaliatory firing, Plaintiff returned to work to serve his patients. He worked until October 28, 2024, when Defendants fired him without cause.

**ANSWER:**

In response to Paragraph 40 of Plaintiff's Amended Complaint, first sentence, Defendants lack knowledge or information sufficient to admit or deny what Plaintiff felt. In response to the second sentence, Defendants admit only that Plaintiff's last day of employment was October 28, 2024 and otherwise deny the same in the form and manner alleged.

**Response to Count I – Violation of False Claims Act - Retaliation**

41.     Plaintiff incorporates the allegations of prior paragraphs, as if they were restated herein.

**ANSWER:**

In response to Paragraph 49 of Plaintiff's Amended Complaint, Defendants incorporate by reference their foregoing responses.

42.     Dr. West engaged in protected activity, as defined by 31 U.S.C. § 3730(h)(1), by undertaking steps to stop Defendants from submitting claims for reimbursement to Medicare and/or Medicaid, which were based upon fraudulently created medical records.

**ANSWER:**

In response to Paragraph 13 of Plaintiff's Amended Complaint, Defendants answer that the same states a legal conclusion to which no response is required. To the extent further answer is required, Defendants deny the same as untrue.

43.     Dr. West alerted Dr. Grill in June 2021 to a problem with Dr. Bonnema's ICD procedures and in May 2024 by turning over his aforementioned report.

**ANSWER:**

In response to Paragraph 43 of Plaintiff's Amended Complaint, Defendants lack knowledge or information sufficient to admit or deny the same and leave Plaintiff to his proofs.

44.     Within three weeks of submitting a report and notes of Dr. West and other doctors from the practice group detailing their accusation about Dr. Bonnema's fraudulent procedures, Defendants took a variety of adverse actions in retaliation against Dr. West, including suspending him from employment and hospital privileges; later permanently terminating his practice lead

position and his Chief of Cardiology position with the hospital; falsely reporting and/or insinuating

his retirement to patients; and eventually firing him and ending his hospital privileges entirely.

**ANSWER:**

In response to Paragraph 44 of Plaintiff's Amended Complaint, Defendants deny the same

as untrue.

**WHEREFORE,** Defendants respectfully request that this Honorable Court dismiss this

claim, with prejudice, and award Defendants all costs and attorney's fees incurred in defending

the same and all other relief to which they are entitled.

**Response to Count II – Violation of Michigan's Whistleblowers' Protection Act**

45.    Plaintiff incorporates the allegations of prior paragraphs, as if they were restated

herein.

**ANSWER:**

In response to Paragraph 45 of Plaintiff's Amended Complaint, Defendants incorporate by

reference their foregoing responses.

46.    Dr. West engaged in protected activity, as defined by Mich. Comp. Laws § 15.361

et seq., by reporting his belief to the U.S. Attorney's Office that Defendants and Dr. Bonnema

were submitting claims for reimbursement which were based upon fraudulently created and/or

altered medical records, which violates federal and state law.

**ANSWER:**

In response to Paragraph 13 of Plaintiff's Amended Complaint, Defendants answer that the same states a legal conclusion to which no response is required. To the extent further answer is required, Defendants deny the same as untrue.

47.    Defendants took a variety of adverse actions, including suspension of employment and hospital privileges, loss of practice and hospital department management positions, and eventual termination of employment and hospital privileges, in retaliation for Plaintiff's protected activity under WPA.

**ANSWER:**

In response to Paragraph 47 of Plaintiff's Amended Complaint, Defendants deny the same as untrue.

48.    As a result of the foregoing, Plaintiff has lost earnings and benefits and incurred mental anguish, emotional distress, unfair reputational damage, and legal costs and attorney fees for which Defendants are liable.

**ANSWER:**

In response to Paragraph 48 of Plaintiff's Amended Complaint, Defendants deny the same as untrue.

**WHEREFORE,** Defendants requests that this Honorable Court dismiss this claim, with prejudice, and award Defendants all costs and attorneys' fees incurred in defending the same and all other relief to which they are entitled.

Respectfully submitted,

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ David A. French
David A. French (P31944)
Larry R. Jensen (P60317)
Kathryn E. Jones (P75431)

Attorneys for Defendants
101 W. Big Beaver Road, Suite 745
Troy, MI 48084
(248) 740-7505
dfrench@hallrender.com
ljensen@hallrender.com
kejones@hallrender.com

Dated: March 11, 2025

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL WEST, M.D.,

      Plaintiff,

v.

ADVANTAGE HEALTH/SAINT MARY'S
MEDICAL GROUP d/b/a TRINITY HEALTH
MEDICAL GROUP (f/k/a MERCY HEALTH
PHYSICIAN PARTNERS) and MERCY HEALTH
PARTNERS d/b/a TRINITY HEALTH
MUSKEGON HOSPITAL,

      Defendants.

Case No. 1:24-CV-1236

Hon. Jane M. Beckering

---

## RELIANCE ON JURY DEMAND

NOW COME Defendants, Advantage Health/Saint Mary's Medical Group d/b/a Trinity Health Medical Group (f/k/a Mercy Health Physician Partners) and Mercy Health Partners d/b/a Trinity Health Muskegon Hospital (collectively referred to herein as "Defendants"), by and through their attorneys, and hereby rely upon the demand of a trial by jury previously filed in the above-entitled cause of action.

Respectfully submitted,

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ David A. French
David A. French (P31944)
Larry R. Jensen (P60317)
Kathryn E. Jones (P75431)
Attorneys for Defendants
101 W. Big Beaver Road, Suite 745
Troy, MI 48084
(248) 740-7505
dfrench@hallrender.com
ljensen@hallrender.com
Dated: March 11, 2025          kejones@hallrender.com

22

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL WEST, M.D.,

   Case No. 1:24-CV-1236

  Plaintiff,

v.          Hon. Jane M. Beckering

ADVANTAGE HEALTH/SAINT MARY'S
MEDICAL GROUP d/b/a TRINITY HEALTH
MEDICAL GROUP (f/k/a MERCY HEALTH
PHYSICIAN PARTNERS) and MERCY HEALTH
PARTNERS d/b/a TRINITY HEALTH
MUSKEGON HOSPITAL,

  Defendants.

---

### DEFENDANTS' AFFIRMATIVE DEFENSES

  NOW COME Defendants, Advantage Health/Saint Mary's Medical Group d/b/a Trinity Health Medical Group (f/k/a Mercy Health Physician Partners) and Mercy Health Partners d/b/a Trinity Health Muskegon Hospital (collectively referred to herein as "Defendants"), by and through their attorneys, and for its affirmatives to Plaintiff's Amended Complaint states as follows:

  Defendants, by stating their affidavit defenses, do not hereby assume any burden of proof that would otherwise rest with Plaintiff:

  1.  Plaintiff's claim fails to state a claim on which relief can be granted.

  2.  Plaintiff's damages are barred, in whole or in part, by the failure to mitigate his damages.

  3.  Plaintiff's damages are barred, in whole or in part, by the mitigation of his damages.

  4.  Plaintiff's claims are barred, in whole or in part, because he has suffered no damages, his entitlement to which is expressly denied.

  5.  Plaintiff's claims are barred, in whole or in part, by applicable statute(s) of

23

limitations and/or jurisdictional prerequisites.

6.      Plaintiff's claims are barred, in whole or in part, by doctrines of waiver, estoppel, and/or laches.

7.      Defendants' actions were taken for legitimate, non-retaliatory reasons.

8.      There is no proximate cause between the action of which Plaintiff complains of and Defendants.

9.      Insofar as the Plaintiff's causes of action in the Amended Complaint sound in fraud, the Amended Complaint fails to plead fraud with particularity as required by Rules 8(a) and 9(b) of the Federal Rule of Civil Procedure.

10.     Plaintiff's claims are barred, in whole or in part, because Defendants did not act *knowingly* as defined by the False Claims Act.

11.     Insofar as Plaintiff claims that Defendants submitted false or fraudulent claims in violation of the False Claims Act, Plaintiff's claims are barred.

12.     Insofar as Plaintiff claims that Defendants submitted false or fraudulent claims in violation of the False Claims Act, Plaintiff has failed to establish or identify any such false or fraudulent claims allegedly submitted.

13.     The qui tam provisions of the False Claims Act that allow private citizens to prosecute an action on their own in the event the government declines intervention, 31 U.S.C. § 3730(b)(1), violate the Appointments Clause of the United States Constitution, art. II, § 2, cl. 2.

14.     Plaintiff's Whistleblowers' Protection Act claim is preempted, in whole or in part, by federal law.

15.     Even if Plaintiff reported or was about to report a violation or suspected violation of law to a public body, Plaintiff knew such reports were false.

16.     Defendants object to the misjoinder and/or failure to join all parties.

17.     Plaintiff's claims are barred, in whole or in part, because Defendants are entitled to any and all credits, set-offs or other legal or equitable defenses which may obviate or mitigate Plaintiff's damages, if any.

18.     Plaintiff's claims may be barred by the doctrine of after-acquired evidence.

19.     Plaintiff unreasonably failed to utilize existing policies and procedures in place with Defendant in order to avoid the harm which Plaintiff alleges.

20.     Plaintiff is barred from any remedy against Defendants because Plaintiff's damages, if any, were caused in whole or in part by the acts or omissions of others, whose conduct Defendants did not control and for whose conduct Defendants were not responsible.

21.     Defendants reserve the right to assert additional defenses as may arise during the course of this litigation.

**WHEREFORE**, Defendants respectfully request that this Honorable Court dismiss Plaintiff's Amended Complaint, with prejudice, and award Defendants their costs and attorney fees so wrongfully sustained.

Respectfully submitted,

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ David A. French
David A. French (P31944)
Larry R. Jensen (P60317)
Kathryn E. Jones (P75431)
Attorneys for Defendants
101 W. Big Beaver Road, Suite 745
Troy, MI 48084
(248) 740-7505
dfrench@hallrender.com
ljensen@hallrender.com
kejones@hallrender.com

Dated: March 11, 2025